IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 12, 2003 Session

## IN RE: PETITION OF JAMES F. WATSON, GENERAL SESSIONS COURT JUDGE

**Appeal from the Chancery Court for McMinn County**
**No. 20672      Jerri S. Bryant, Chancellor**

**FILED JULY 31, 2003**

**No. E2002-02480-COA-R3-CV**

This is a declaratory judgment action. Judge James F. Watson was, at all relevant times, the general sessions court judge for McMinn County. Prior to 2000, McMinn County was classified as a county of the second class and Judge Watson was paid in accordance with the statutory compensation scheme for such counties. As a result of the 2000 census, McMinn County became a county of the first class. Judge Watson filed a petition seeking a determination as to the proper calculation of his salary as a class one general sessions court judge. The trial court determined that Judge Watson was entitled to continue receiving the jurisdictional supplements to his salary that he had been receiving as a class two judge. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Michael E. Evans, Nashville, Tennessee, for the appellant, McMinn County, Tennessee.

James F. Watson, Pro Se.

### OPINION

I.

Prior to September 1, 1990, Tenn. Code Ann. § 16-15-204 (repealed 1993) governed the classification of Tennessee counties for the purpose of determining the compensation of general sessions court judges. That statute delineated eight classes of counties. In pertinent part, it provided as follows:

(a)(1) Counties having a population of one hundred thousand (100,000) or more, shall constitute counties of the first class;

(2) Counties having a population of fifty thousand (50,000) or more, but less than one hundred thousand (100,000), shall constitute counties of the second class;

* * *

(b) The population of the several counties for the purposes of this chapter shall be determined by the federal census of 1950, and by each succeeding federal census.

The salary scale for judges in each of the eight different classifications was set forth in Tenn. Code Ann. § 16-15-205 (repealed 1993). Effective September 1, 1982, the annual base salary for general sessions court judges of the first class was $51,000, and for judges of the second class, $38,941. *See* Tenn. Code Ann. § 16-15-205(d)(1)(A) & (B). This statute also provided for salary supplements to general sessions court judges who exercised additional jurisdiction. For example, a judge with juvenile court jurisdiction received an annual supplement equal to 10% of his or her annual salary, and a judge who exercised probate jurisdiction received a supplement of 5%.[1] *See* Tenn. Code Ann. § 16-15-205(d)(2) & (3). Beginning July 1, 1983, the salaries of all general sessions court judges were adjusted annually to reflect the annual increase in the cost of living. *See* Tenn. Code Ann. § 16-15-205(d)(4).

On September 1, 1990, Tenn. Code Ann. § 16-15-5001 (Supp. 2002) became effective, replacing Tenn. Code Ann. § 16-15-204, and providing, in pertinent part, the following:

(a) For the purpose of determining the compensation of a general sessions judge, the counties of this state are divided into eight (8) classes as follows:

(1) Counties having a population of more than forty-nine thousand (49,000) constitute counties of the first class;

(2) Counties having a population of more than thirty-eight thousand (38,000) but not more than forty-nine thousand (49,000) constitute counties of the second class;

* * *

---

[1]Certain classifications of judges were not eligible to receive these supplements. However, as these classifications are not relevant to this appeal, they will not be discussed.

(b) The class into which a county falls shall be determined by the 1990 federal census and any subsequent federal census or any special census conducted by the department of economic and community development.

\* \* \*

(d)(2) If a county is in one class as provided in this section on September 1, of the year in which a judge is elected to office and after such date, such county moves into another class on the basis of a subsequent census, the salary of such judge shall be determined by the higher classification for the remainder of the term for which the judge was elected.

September 1, 1990, was also the effective date of Tenn. Code Ann. § 16-15-5003 (Supp. 2002), the new statute addressing the calculation of salaries of general sessions court judges. The statute sets a base salary of $70,000 for all general sessions court judges in class one counties, and a base salary of $50,000 for judges in class two counties. *See* Tenn. Code Ann. § 16-15-5003(a)(1) & (2). The statute also provided that judges in class two and three counties exercising juvenile court jurisdiction would be entitled to an annual supplement of $20,000, and a $10,000 supplement for exercising probate jurisdiction. *See* Tenn. Code Ann. § 16-15-5003(b)(1)(A) & (B). However, the annual supplements were capped at a maximum of $20,000, "[r]egardless of the kind or amount of additional jurisdiction a Class 2 judge may have,. . . ." *See* Tenn. Code Ann. § 16-15-5003(b)(2). Additionally, the statute provided that, beginning July 1, 1991, the judges' salaries would be adjusted annually to reflect the increase in the cost of living. *See* Tenn. Code Ann. § 16-15-5003(f).

When Tenn. Code Ann. § 16-15-5003 went into effect, judges in class one counties who exercised additional jurisdiction were excluded from the list of those entitled to receive annual supplements; their salaries were capped at $70,000, plus annual adjustments for the cost of living. However, at the time Tenn. Code Ann. § 16-15-5003 was enacted, Tenn. Code Ann. § 16-15-205 had not yet been repealed. Accordingly, class one judges were still receiving their annual supplements pursuant to § 16-15-205. *Effective July 1, 1993, § 16-15-205 was repealed. See* Chapter 241, Public Acts of 1993. Nine months later, the Tennessee Attorney General issued an opinion addressing the issue of juvenile court supplements for general sessions court judges in class one counties:

> It is the opinion of this Office that, beginning July 1, 1993, the salary of general sessions court judges has been governed solely by [Tenn. Code Ann.] § 16-15-5003 as a result of the express repeal of [Tenn. Code Ann.] § 16-15-205 by 1993 Tenn. Pub. Acts Ch. 241.
>
> *It is also the opinion of this Office, however, that because of Article VI, § 7 of the Tennessee Constitution, 1993 Tenn. Pub. Acts Ch. 241 may not be construed as having the effect, during any judge's term*

*that commenced prior to July 1, 1993, of denying to such judge any supplemental salary, if the supplement was paid pursuant to a statutory provision that was in effect when the judge's term began.*

Therefore, this Office also renders its opinion that, prior to the effective date of the express repeal of [Tenn. Code Ann.] § 16-15-205, any salary supplement for juvenile court jurisdiction that was paid to a general sessions court judge in a class 1 county was legally paid pursuant to [Tenn. Code Ann.] § 16-15-205(d)(2), which was in effect during such time, and that such supplement may not be increased or diminished during the continuation of a judge's term that began prior to July 1, 1993.

Op. Tenn. Att'y Gen. 94-044 (April 4, 1994) (emphasis added).  Over a year and a half later, the Attorney General issued another opinion, stating, based upon the same rationale, that class one judges also could continue to receive supplements for exercising probate and divorce jurisdiction. Op. Tenn. Att'y Gen. U95-093 (December 22, 1995).

One year prior to the 1998 elections, the General Assembly amended Tenn. Code Ann. § 16-15-5003 by adding subsection (i), which provides as follows:

Effective September 1, 1998, the annual salary for a general sessions court judge shall be increased over the annual compensation and supplements and annual adjustments which each judge actually received as of August 31, 1998, by the lesser of:

(A) Ten thousand dollars ($10,000); or

(B) Twenty percent (20%) of such annual compensation and supplements and annual adjustments as of August 31, 1998.

Thus, judges in class one counties who were reelected to office in August, 1998, received their annual salary, plus any annual jurisdictional supplements they were "actually" receiving on August 31, 1998.  In addition, those judges received a $10,000 increase over the amount they were actually being paid on August 31, 1998.

II.

In August, 1986, Judge Watson was elected to fill the unexpired term of the previous General Sessions Court judge for McMinn County.  In addition, Judge Watson served as the judge of the McMinn County juvenile and probate courts.  At the time of his election, McMinn County was classified as a county of the second class, pursuant to Tenn. Code Ann. § 16-15-204.  As a general sessions court judge in a class two county who was exercising both juvenile and probate jurisdiction,

-4-

Judge Watson received both the 10% and the 5% annual supplements, pursuant to Tenn. Code Ann. § 16-15-205(d)(2) & (3).

Judge Watson was reelected in August, 1990. When Tenn. Code Ann. § 16-15-5001 became effective on September 1, 1990, McMinn County was still classified as a class two county, as it had a population of between 38,000 and 49,000 according to the 1990 federal census. Pursuant to Tenn. Code Ann. § 16-15-5003, Judge Watson began receiving a base salary of $50,000, plus an additional $20,000 in supplements, based upon his exercise of juvenile and probate jurisdiction, for a total of $70,000, not including the annual cost of living adjustments to which he was entitled.

In August, 1998, Judge Watson was reelected once again, and he continued to receive his salary and supplements as a class two judge. When the 2000 federal census results were made public, McMinn County was found to have a population of over 49,000, which moved the county into a class one designation. As such, Judge Watson found himself as a general sessions court judge in a class one county for the remainder of the 1998-2006 term. Pursuant to Tenn. Code Ann. §§ 16-15-5001 and 16-15-5003, Judge Watson was then entitled to receive a base salary of $70,000; however, there was not, at that time, a statute in effect expressly providing for the payment of jurisdictional supplements to class one judges.

On June 29, 2001, the Attorney General issued an opinion specifically addressing Judge Watson's situation, finding that he was not entitled to continue receiving the jurisdictional supplements that he had received as a judge of a class two county because "[n]o statute currently in effect authorizes the payment of jurisdictional supplements to a judge in a county that is newly classified as a first class county." Op. Tenn. Att'y Gen. 01-107 (June 29, 2001). In addition, the Attorney General opined that there is no evidence of any legislative intent to allow such judges to continue receiving supplements, and that the differences in treatment of class one judges "are rationally related to the legitimate state interest of retaining incumbent judges." *Id.*

Two and a half months later, Judge Watson filed this petition for declaratory judgment, seeking a determination of the proper calculation of his salary as a new class one judge. In his petition, Judge Watson avers that his salary for the remainder of the 1998-2006 term should be calculated by "consider[ing] all laws that were in effect from September 1, 1990 forward which have actually affected and still affect the salaries of general sessions court judges previously in class [two] counties prior to the 2000 census." Judge Watson argues that "it is the clear legislative intent that all general sessions court judges similarly situated by county class and jurisdiction be paid the same salaries" and that, more specifically, Tenn. Code Ann. § 16-15-5001(d)(2) "reflects a clear intent by the legislature" to pay judges who move into a higher county classification the same salary as their colleagues. In addition, Judge Watson alleges that the Equal Protection clauses of both the Tennessee[2] and United States[3] constitutions "require[] that all persons similarly situated be treated the same."

---

[2]Tenn. Const. art. I, § 8.

[3]U.S. Const. amend. XIV.

McMinn County answered Judge Watson's petition, denying the core of his claim for relief. Following a hearing, the trial court entered its order on August 21, 2002, finding as follows:

> The General Assembly provided under [Tenn. Code Ann.] § 16-15-5001(d), that when a county is in one class on the date on which a judge is elected to office and after that date that county moves to another class on the basis of a subsequent census, the *salary* of such judge shall be determined by the higher classification for the remainder of the term for which the judge is elected. The Attorney General of the State of Tennessee has provided the opinion that [Tenn. Code Ann.] § 16-15-5003(i) allows some Class 1 judges, who were still receiving jurisdictional supplements under [Tenn. Code Ann.] § 16-15-205 and Attorney General Opinion 94-44, to receive a $10,000 increase over their actual August 31, 1998 salary. This meant that the salary for the judges in the 1998 term would continue to reflect those jurisdictional supplements. [Tenn. Code Ann.] § 16-15-5003(i) allows supplements to continue.
>
> There is no rational basis to differentiate between Class 1 judges who were receiving supplements prior to August 31, 1998, and continue those in the 1998 term and those who are moved to Class 1 by virtue of the 2000 census. Those moved to Class 1 by the census should be equally entitled to continue their supplements as those that were likewise reelected to another term in 1998 and were receiving supplements prior to August 31, 1998.

(Emphasis in original). From this order, McMinn County appeals.

### III.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); **Wright v. City of Knoxville**, 898 S.W.2d 177, 181 (Tenn. 1995); **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993). Our review of questions of law is *de novo* with no such presumption of correctness attaching to the trial court's conclusions of law. **Campbell v. Florida Steel Corp.**, 919 S.W.2d 26, 35 (Tenn. 1996); **Presley v. Bennett**, 860 S.W.2d 857, 859 (Tenn. 1993).

### IV.

McMinn County argues that the trial court erred in determining that Judge Watson is entitled to continue receiving his jurisdictional supplements, as such supplements are not authorized by statute. We agree.

As previously discussed, the Attorney General addressed this very issue when he replied to an inquiry specifically pertaining to Judge Watson in Op. Tenn. Att'y Gen. 01-107 (June 29, 2001). Because we agree with the Attorney General's determination on this issue and decide this case on the same bases, we quote liberally from that opinion:

> Under Tenn. Code Ann. § 16-15-205, general sessions judges were entitled to salary supplements for exercising juvenile and probate court jurisdiction. The General Assembly expressly repealed that statute in 1993. But our Office concluded that Class 1 judges who took office before the repeal were entitled to continue receiving these supplements until the end of their current term – in most cases, until August 31, 1998. In 1997, the General Assembly amended Tenn. Code Ann. § 16-15-5003 to add subsection (i) regarding the salaries of general sessions judges for the term beginning September 1, 1998. That subsection provides:
>
> > Effective September 1, 1998, the annual salary for a general sessions court judge shall be increased over the annual compensation and supplements and annual adjustments which each judge *actually received as of August 31, 1998*, by the lesser of:
> > (A) Ten thousand dollars ($10,000); or
> > (B) Twenty percent (20%) of such annual compensation and supplements and annual adjustments as of August 31, 1998.
>
> (Emphasis added). Thus by its terms, Tenn. Code Ann. § 16-15-5003(i) provides that each judge reelected to office was entitled to receive an increase over the salary and supplement he or she *actually received* on August 31, 1998. Presumably, at least some judges in class one counties were still receiving additional jurisdictional supplements under Tenn. Code Ann. § 16-15-205 and Opinion 94-44 as of August 31, 1998. Those judges therefore received a $10,000 increase over their *actual* August 31, 1998, salary. If a class one judge was actually receiving jurisdictional supplements on August 31, 1998, then that judge's salary for the 1998 term will continue to reflect those jurisdictional supplements.
>
> The request asks whether, because some judges in counties of the first class continue to receive a salary that reflects jurisdictional supplements, the salaries of judges whose counties move into class one as a result of the 2000 census should also reflect those supplements.

We have reviewed the legislative history for the various acts now codified at Tenn. Code Ann. § 16-15-5003. We do not think the General Assembly intended the statute to be interpreted to entitle individuals who were not actually receiving salary supplements under the repealed statute to receive them when their salary is recalculated. The effect of this interpretation would be to incorporate jurisdictional supplements no longer directly authorized by statute permanently into the base salary of the class one judge. The statutory language does not support this interpretation. Tenn. Code Ann. § 16-15-5003(i) nowhere purports to increase the base salary payable to a judge in a class one county. Further, the statute refers to an increase over the salary the judge was *actually receiving* as of August 31, 1998. It does not refer to an increase over the hypothetical maximum salary to which a general sessions judge in a class one county would have been entitled as of that date. In any case, as of that date no statute then in effect expressly authorized these supplements. Finally, Tenn. Code Ann. § 16-15-5003(i)(4)(A), enacted in 1997, expressly provides:

> (4)(A) The compensation, supplement and annual adjustment provisions of this section are to be construed as minimum levels. The compensation schedule established by *this part* is a comprehensive plan, and *no salary supplement in excess of the supplements provided by this part shall be available to a general sessions judge unless expressly provided and funded by a private act.*

(Emphasis added). Tenn. Code Ann. § 16-15-205 did not appear in Part 50 of the statute, but in Part 2. Further, that statute was repealed in 1993. Tenn. Code Ann. §16-15-5003(i)(4)(A) therefore supports the argument that the General Assembly did not intend any judge besides those in office who were actually receiving supplements on August 31, 1998, to receive a salary reflecting supplements under that statute. For these reasons, we think that supplements formerly authorized under Tenn. Code Ann. § 16-15-205 should only be reflected in the salary of general sessions judges in counties of the first class who were *actually receiving* those supplements as of August 31, 1998.

(Citation omitted) (emphasis in original). We believe the Attorney General's interpretation of Tenn. Code Ann. § 16-15-5003 is the correct one. Judge Watson is essentially asking to be treated retroactively as a class one judge, which is neither proper nor contemplated under the present statutory scheme. As Judge Watson was not *actually receiving* the salary and supplements of a class

one judge on August 31, 1998, he was not entitled to begin receiving those supplements when he became a class one judge in 2000.

Judge Watson asserts that the legislature clearly intended that general sessions court judges in each county classification who exercise equal jurisdiction are to be paid equally, and that to pay some judges in class one counties more than others would violate that legislative intent. We disagree.

In addressing this issue of legislative intent, the Attorney General found as follows:

> [B]y referring to the salary each judge *actually received* on August 31, 1998, as the base for the salary during that judge's next term, the General Assembly in effect preserved any discrepancies of pay existing among counties of the same class as of that date. Thus, if a class one judge was actually receiving supplements as of that date, and he or she is elected to a subsequent term, that judge will continue to receive a salary that reflects the supplements. If a class one judge was not receiving such supplements as of that date, and he or she is elected to a subsequent term, that judge will receive a salary that does not reflect the supplements. For this reason, excluding jurisdictional supplements from the salary for judges in counties that have moved into counties of the first class as a result of the 2000 census does not contradict the General Assembly's legislative intent.

Op. Tenn. Att'y Gen. 01-107 (June 29, 2001).

Judge Watson contends that Tenn. Code Ann. § 16-15-5003(i)(2) contemplates that judges in the same county exercising the same jurisdiction will be compensated equally, and that it is "obviously intended to confer on newly elected or appointed judges the full benefits of all past salary calculations enjoyed by the more senior judges in each county." However, as demonstrated by the Attorney General's opinion, such an interpretation is erroneous. General sessions court judges who took office in class one counties for the first time on September 1, 1998, and who began exercising juvenile, probate or other jurisdiction, would not be entitled to receive the jurisdictional supplements because they were not actually receiving those supplements on August 31, 1998. By the same token, judges in class one counties who were elected to fill new positions created by the legislature[4] after Tenn. Code Ann. § 16-15-205 was repealed but prior to August 31, 1998, and who were exercising additional jurisdiction, would not be entitled to receive jurisdictional supplements for the same reason. Clearly, it is possible, under the statutory scheme, that some class one judges are receiving more compensation than are some of their fellow judges in counties of the first class. We agree with

___

[4]Obviously, we are speaking hypothetically. We do not know whether such judgeships were in fact created. The point is that if such judgeships were created and filled during the indicated time frames, the new judges, unlike their more senior colleagues sitting as class one judges, would not have been entitled to the benefit of the jurisdictional supplements.

the Attorney General that the legislature did not intend to equally compensate all class one judges exercising the same jurisdiction. Rather, the legislature carved out a slim exception for those judges who had been receiving the jurisdictional supplements prior to July 1, 1993. Judges, such as Judge Watson, who become class one judges after that date are not entitled to receive the benefit of the jurisdictional supplements.

Judge Watson also argues that there is no rational basis for treating some class one judges differently from others of the same rank, and that constitutional principles, namely Article I, Section 8 of the Tennessee Constitution and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, should be considered. The Attorney General addressed this argument as follows:

> The right of equal protection under the law guarantees that all persons similarly situated will be treated the same. *Hartford Steam Boiler Inspection [& Ins. Co.] v. Harrison*, 301 U.S. 459, 57 S. Ct. [838] (1937). But equal protection of the law does not require equality of treatment where there is a reasonable and material difference between the classes of persons in question. *Rinaldi v. Yeagar*, 384 U.S. 305, 86 S. Ct. 1497 [(1966)]; *Graham v. West Virginia*, 224 U.S. 616, 32 S. Ct. 58[3] (19[12]). A statutory scheme that involves no suspect classification and does not infringe on a fundamental right is subject to review under the rational basis test. Under that test, where a group possesses distinguishing characteristics relevant to the interests the State has the authority to implement, a state's decision to act on the basis of those differences does not give rise to a constitutional violation. *[Bd.] of [Trs.] of [Univ.] of Alabama v. Garrett*, [531] U.S. [356], 121 S. Ct. 955 (2001). Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. *Id.* The State need not articulate its reasoning at the moment a particular decision is made; rather, the burden is upon the challenging party to negate any reasonably conceivable state of facts that could provide a rational basis for the classification. *Id.*

> In the present case, the statutory scheme ensures that an incumbent judge who has been receiving salary supplements under the old statute will not experience a pay cut when his or her 1990 term expires and he or she begins a new term. We think this result is rationally related to the legislative interest of encouraging experienced judges to remain in office. By contrast, the maximum salary – excluding private act supplements – a judge can receive in a county of the second class is $70,000, plus cost of living increases and the $10,000 maximum increase. The maximum salary – excluding private act supplements – a judge of the first class can now

receive under Tenn. Code Ann. § 16-15-5003, as interpreted in this opinion, is the $70,000 base, plus cost of living increases and the $10,000 maximum increase. It therefore appears that a judge in a county of the second class – regardless of the jurisdiction he or she was exercising – will not experience a pay cut as a result of the change in county classification if the new salary does not reflect the jurisdictional supplements under Tenn. Code Ann. § 16-15-205. For this reason, we think there is a rational basis for the different methods of calculation. *See, e.g., **Gulbrandson v. Carey***, 272 Mont. 494, 901 P.2d 573 (1995), *rehearing denied* (1995) (a statute providing increased retirement benefits to judges who retired after its effective date was rationally related to the legislative purpose of providing an incentive for judges then serving to remain on the bench). For this reason, we think a court would conclude that the statutes for determining the salary of judges in counties of the first class comply with the Equal Protection Clause of the United States Constitution.

Op. Tenn. Att'y Gen. 01-107 (June 29, 2001).

We agree with the Attorney General and conclude that the statutes in question do not run afoul of the Equal Protection Clause or Article I, Section 8 of the Tennessee Constitution. There is a rational basis for treating those class one judges who were receiving the jurisdictional supplements prior to July 1, 1993, differently: the legislature wanted to encourage those experienced, incumbent judges to run for reelection, and by allowing those judges to retain the benefit of their supplements, the legislature provided them with an incentive to remain in office. We believe this reasoning is sufficient to justify placing those judges in a special classification.

Accordingly, we find that the trial court erred in determining that Judge Watson was entitled to continue receiving his jurisdictional supplements. He is entitled to the base salary of $70,000, the $10,000 maximum increase provided for in Tenn. Code Ann. § 16-15-5003(i)(1)(A), and the benefit of cost of living increases provided for in Tenn. Code Ann. § 16-15-5003(f).

V.

The judgment of the trial court is reversed. This case is remanded to the trial court for such further proceedings, if any, as may be required, and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellee, Judge James F. Watson.

_____
CHARLES D. SUSANO, JR., JUDGE